IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, )<br>)<br>Plaintiff), )<br>)<br>vs. )<br>)<br>Adrian Rasheed White, Leticia Guitierrez Medina and Leticia Dayana Medina, )<br>)<br>Defendants. )<br>) | Civil Action No.: 2:25-cv-03601-RMG<br><br><br><br>**DECLARATORY JUDGMENT<br>COMPLAINT** |

Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm"), by and through its undersigned counsel, brings this Complaint for Declaratory Judgment against Defendants Leticia Gutierrez Medina, and Leticia Dayana Medina (collectively, "the Medinas") and Adrian Rasheed White, pursuant to 28 U.S.C. §§ 2201 *et seq*. and Rule 57 of the Federal Rules of Civil Procedure, and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between State Farm, a citizen of Illinois, and Defendants, citizens of South Carolina, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to this dispute occurred in Charleston County, South Carolina, and one or more of the Defendants resides or conducts business in this district.

## PARTIES

3. Plaintiff State Farm is an insurance company organized and existing under the laws of Illinois with its principal place of business in Illinois.

4. Defendant Adrian Rasheed White is an individual residing in South Carolina.

5. Defendant Leticia Gutierrez Medina is an individual residing in South Carolina.

6. Defendant Leticia Dayana Medina is an individual residing in South Carolina.

## FACTUAL ALLEGATIONS

7. This action concerns a South Carolina automobile insurance policy issued to Adrian White, by State Farm, Policy No. 707 0670-F08-40, with a policy term of June 8, 2023 to December 8, 2023 (the "White Policy") (Attached as **Exhibit A**).

8. This action also concerns a South Carolina automobile insurance policy issued to Leticia Gutierrez Medina by State Farm, Policy No. 479 1962-D16-40C, with a policy term of April 16, 2023 to October 16, 2023 (the "Medina Policy") (Attached as **Exhibit B**).

9. There was a collision between a car driven by Adrian Rasheed White and a car driven by Leticia Gutierrez Medina on or about October 6, 2023.

10. At the time of the collision, Leticia Dayana Medina was a passenger in the car driven by Leticia Guiterrez Medina.

11. White was found at fault in the collision by the responding police officer.

12. According to the police report, after White was told he was found to have contributed to the accident, he informed the responding officer that he had been rear-ended by a third vehicle, which caused the accident.

13. The officer observed a black scrape and dent on the passenger side of White's rear bumper.

14. White informed State Farm that he was not at fault in the accident and that a third vehicle rear-ended him and caused the accident.

15. In reliance upon White's statement, State Farm paid for damages to White's automobile under White's uninsured motorist property damage coverage.

16. After the Medinas made claims against White's liability coverage, and in reliance upon White's statement, State Farm denied the Medinas' liability claims.

17. On March 6, 2024, the Medinas filed a Summons and Complaint alleging White was at fault and caused damages in the collision. (Attached as **Exhibit C**)

18. The Medinas allege White was personally served with the Summons and Complaint on April 4, 2024, as explained in the Medinas' subsequent Memorandum in Opposition to White's Motion for Relief from Default (Attached as **Exhibit D**).

19. On May 7, 2024, the Medinas moved for Entry of Default and for a damages hearing.

20. On May 17, 2024, the Medinas' Motion was granted, an Entry of Default was entered against White, and it was ordered that a damages hearing would be conducted.

21. On July 22, 2024, the Charleston County Court of Common Pleas issued notice to the Medinas setting a damages hearing for August 22, 2024.

22. The Medinas chose not to serve State Farm as their UIM carrier pursuant to S.C. Code Ann. § 38-77-160 until after receiving notice that the damages hearing was set.

23. Prior to filing the April 4, 2024 complaint, counsel for the Medinas intended to seek UIM proceeds from the Medina policy.

24. The Medinas, through their counsel, demanded that State Farm tender its UIM limits on the Medina Policy on February 28, 2024.

25. However, the Medinas did not serve State Farm under S.C. Code Ann. § 38-77-160 at any time between February 28, 2024 and July 26, 2024.

26. On July 26, 2024, the South Carolina Department of Insurance ("SCDOI") accepted service of the Summons and Complaint under S.C. Code Ann. § 38-77-160.

27. Nineteen days after accepting service, SCDOI sent the Summons and Complaint to State Farm, care of Corporation Service Company, via certified mail. (August 14, 2024 letter, attached as **Exhibit E**).

28. Counsel for the Medinas was copied on SCDOI's August 14 service letter.

29. Counsel for the Medinas received SCDOI's August 14 service letter and was on notice of it prior to the August 22, 2024 damages hearing.

30. The Medinas, through their counsel, had knowledge that service under S.C. Code. § 38-77-160 occurred less than 30 days before the August 22, 2024 damages hearing.

31. The Medinas allege that on August 8, 2024, they provided notice of the August 22 2024 damages hearing to White through a letter sent by U.S. Mail to White's "last known address."

32. The Medinas did not provide any notice of the August 22, 2024 damages hearing to their UIM carrier.

33. On August 22, 2024, the Medinas participated in a damages hearing in the Charleston County Court of Common Pleas.

34. The Medinas did not request a continuance of the damages hearing to allow 30 days to elapse between the service required by 38-77-160 and either the entry of default or the damages hearing.

35. As a result of the damages hearing, $223,785.34 was awarded to Leticia Guitierrez Medina and $101,064.52 was awarded to Leticia Guitierrez Medina.

36. The Medinas did not offer any proof of gross negligence and no punitive damages were awarded against White.

37. At the damages hearing, the Medinas did not inform the hearing judge that less than thirty days had elapsed since they served their UIM carrier.

38. After the damages hearing was concluded, at approximately 5:36 p.m. on August 22, 2024, the Medinas filed the SCDOI's August 14 letter showing State Farm had been served after default had been entered against White and less than 30 days prior to the damages hearing.

39. On February 6, 2025, the Medinas demanded that State Farm pay $237,367.37 to satisfy the claims of Leticia Guitierrez Medina and $107,198.14 for the claims of Leticia D. Medina. (Attached as **Exhibit F**)

40. The Medinas alleged State Farm missed a "Tyger River settlement opportunity [and therefore] the policy is 'open.'"

41. The Medinas' reference to a "Tyger River settlement opportunity" refers to a February 28, 2024 time-limit demand (the "TLD"). (Attached as **Exhibit G**)

42. The TLD demanded payment of all of White's property damage liability limits.

43. However, the TLD did not describe any property damage for which the Medinas sought compensation.

44. Additionally, the TLD did not identify any reckless, willful, or wanton conduct underlying the subject accident aside from White allegedly "not paying attention" or "driving at an unreasonable speed and without 'regard to the actual and potential hazards then existing.'"

45. The Medinas either did not seek or were not awarded punitive damages at the damages hearing.

5

46. The TLD demanded payment, "by check" for the benefit of Leticia Dayana Medina and Leticia Guitierrez Medina "of all applicable policies including but not limited to bodily injury [and property damage]." This would include $25,000 each for Leticia Dayana Medina and Leticia Guitierrez Medina, under White's per person BI limits, plus $25,000 collectively under White's PD limits.

47. The TLD demanded receipt of the check by **March 20, 2024, at 5:00 P.M. EST**." (emphasis in original)

48. As of March 20, 2024, Leticia Dayana Medina was a minor.

49. As of March 20, 2024, counsel for the Medinas had neither sought nor obtained court approval of a settlement in favor of Leticia Dayana Medina.

50. As of March 20, 2024, no conservator had been appointed to receive settlement funds for Leticia Dayana Medina.

51. According to the TLD's express terms, "any request for an extension or counteroffer will simply be deemed a rejection."

52. Additionally, the TLD provided the "settlement opportunity must be accepted by performance of the requirements of this letter without variance. A purported acceptance that imposes or even requests conditions beyond those contained herein will be a counteroffer and rejection."

**DECLARATORY JUDGMENT ACTION
PURSUANT TO 28 U.S.C. § 2201,** *et seq.*

53. State Farm incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

54. Following the above-referenced judgment and demand from the Medinas that State Farm pay them collectively $344,565.51 under the above-referenced Policies and under the Tyger

River doctrine, there is currently an actual and justiciable controversy related to the policies between State Farm and the Defendants.

55. Having named all necessary parties, State Farm seeks a declaratory judgment as to the following matters:

### PART 1: NO COVERAGE UNDER WHITE'S POLICY DUE TO FRAUD OR CONCEALMENT

56. State Farm refers to and incorporates the preceding paragraphs herein by reference.

57. Under the White Policy's Concealment or Fraud section "There is no coverage under this policy if **you** or any other **person** insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy."

58. The Medinas claim that White was at fault in the accident and that no third vehicle was involved in the accident.

59. The Medinas also allege that White was served with the underlying Summons and Complaint on April 4, 2024.

60. The Medinas also allege that White was served with notice of the damages hearing prior to the hearing.

61. White did not notify State Farm of his being served with the Summons and Complaint prior to his being placed in default or prior to the damages hearing.

62. White did not notify State Farm of his being served with the notice of the damages hearing.

63. White affirmatively and intentionally represented to State Farm that (1) there was a third vehicle that rear-ended him and caused the subject collision; and (2) that he was never served with the subject Summons and Complaint.

64. White intentionally made various representations in the course of State Farm's investigation to support these alleged facts.

65. To the extent that either of these facts were not true—if there was no third vehicle that caused the collision, or if White was served with the suit—White's fraud and/or concealment of the true facts was intentional.

66. The cause of the collision and White's service with the suit were material facts.

67. To the extent that White has made fraudulent representations or concealed these facts, it has resulted in prejudice to State Farm.

68. Plaintiff seeks a declaratory judgment that it has no duty to indemnify White under the terms of the policy to the extent White has breached the fraud or concealment provision.

69. If and when any judgment against White is entered and final, State Farm seeks leave to deposit the disputed sum pursuant to Rule 67.

**PART 2: NO UNDERINSURED MOTORIST (UIM) COVERAGE UNDER MEDINAS' POLICY DUE TO FAILURE TO COMPLY WITH S.C. CODE ANN. § 38-77-160**

70. State Farm refers to and incorporates the preceding paragraphs herein by reference.

71. The Medinas are seeking underinsured motorist (UIM) coverage under the Medina Policy and to stack coverage from at-home vehicles.

72. South Carolina Code Annotated § 38-77-160 requires that an insured seeking UIM coverage must provide notice to her insurance carrier and allow the insurer an opportunity to defend the at-fault motorist's liability.

73. Additionally, in the Medina Policy the parties agreed that State Farm had "the right to appear and defend in the name of the owner and driver of the **underinsured motor vehicle** on the issues of legal liability of, and the damages owed by, such owner or driver."

74. The Medinas failed to provide timely notice to Plaintiff of their suit against the at-fault motorist, as required by law and the contract of insurance.

75. Instead, the Medinas obtained an entry of default against the at-fault motorist without first notifying Plaintiff, thereby depriving Plaintiff of its statutory and contractual rights to assume the defense of the at-fault motorist.

76. The Medinas then participated in a damages hearing against White and obtained a judgment against him prior to the expiration of the notice required by South Carolina law.

77. Because the Medinas failed to comply with S.C. Code Ann. § 38-77-160, and because they breached the contract of insurance, they are not entitled to recover UIM benefits from Plaintiff.

78. Plaintiff seeks a declaratory judgment that it has no obligation to provide UIM benefits to the Medinas for the above-stated reasons.

79. If and when any judgment against White is entered and final, State Farm seeks leave to deposit the disputed sum pursuant to Rule 67.

### PART 3: NO DUTY TO ACCEPT TLD UNDER TYGER RIVER DOCTRINE

80. State Farm refers to and incorporates the preceding paragraphs herein by reference.

81. The Medinas, through counsel, issued a TLD to Plaintiff requiring Plaintiff write a check for $75,000 to the Medinas, which check was required to be received by the Medinas by 5:00 PM Eastern Standard Time on March 20, 2024.

82. The TLD required State Farm to tender White's property damage limits without providing a reasonable basis supporting that requirement.

83. Additionally, the TLD required State Farm to issue payment of between $25,000 and $50,000 for the benefit of Leticia Dayana Medina, a minor.

84. The TLD prohibited State Farm from conditioning payment on approval of a minor settlement or payment to a conservator "or even request[ing] conditions beyond those contained herein."

85. Because the TLD required expenditure of property damage limits when there was no evidence of extraordinary or punitive conduct leading to the wreck, and also because the TLD would require State Farm to violate state law by issuing large payments to a minor without satisfying the requirements of the Uniform Transfers to Minors Act or the requirements of court approval, State Farm seeks a declaration that the TLD failed to create a duty to accept it under the Tyger River doctrine.

86. This action seeks a declaration of duties that are a matter of law for the Court and therefore should be resolved by the Court without the presence of a jury.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Plaintiff has no duty to indemnify White for the Medinas' judgment against him to the extent he has violated the fraud or concealment portion of his policy;

2. Declare that Plaintiff has no obligation to provide UIM benefits to the Medinas due to their failure to comply with the contract of insurance and S.C. Code Ann. § 38-77-160;

3. Declare that the TLD could not create a duty to accept it under the *Tyger River* Doctrine.

4. Permit the deposit of funds under Rule 67; and

5. Grant such other and further relief as this Court deems just and proper.

WHELAN MELLEN & NORRIS, LLC

By: /s/ ROBERT W. WHELAN
Robert W. Whelan
Federal Bar No. 9242
E-Mail: robbie@whelanmellen.com
89 Broad Street
Charleston, SC 29401
(843) 998-7099

*Attorneys for State Farm Mutual Automobile Insurance Company*

April 30, 2025

Charleston, South Carolina

11